Good morning, Your Honors. May it please the Court, my name is Russell McCrory from Aaron Fox and I represent the Plaintiffs' Appellants. The main issue on this motion for a stay pending appeal involves one simple question, and that is, is the sublease part of the franchise as that term is defined by the New York Dealer Act? And the simple answer to that simple question is yes, and as a result, the District Court's order is contrary to New York law. Can you bring us up to date on today's status? Because we were told something was going to happen yesterday, but nobody told us whether it did or not. Your Honor, something did happen yesterday. The U.S. Marshals did arrive at the premises, and I believe Mr. Skelton was present there. He can probably fill the Court in on more detail, but as of right now, the Marshals have secured the premises. They've secured them. Is that something different than there's been an eviction? I don't know that there's a distinction between that and an eviction, Your Honor. So your client isn't there. Is that fair to say? Your Honor, I think that's a more complex question than yes or no, because this is a shared facility with Jaguar Land Rover on one side, Nissan Infiniti on the other, and shared common areas and shared systems, so they are there. With respect to the Nissan Infiniti-only space, I think the argument is there would have been a technical eviction yesterday, but obviously an order from this Court reversing the underlying order or staying the underlying order could put that back into the status quo ante immediately. Yes, it could, and that's what I'm trying to understand. You want to stay, and I'm trying to understand, in view of whatever happened yesterday, what a stay would accomplish, if anything. Your Honor, I think a stay would accomplish is that my client's BICOM and ACIM and ALIM could recover the space and continue the construction project and continue what they were doing. So a stay would undo whatever happened yesterday? I believe so, Your Honor. Well, that sounds like something more than a stay. A stay usually says just hold everything, whereas you want something undone. Is that right? Yes, Your Honor. So you want more than a stay? Well, yes, Your Honor. Obviously, these were events that happened essentially between Friday and yesterday. I understand. That's why I'm asking about them, because we need to know. Yes, Your Honor. As a practical matter, we would want to undo the eviction and undo the order that was in place last week. Can't you be compensated by money if we don't grant the stay and you ultimately prevail? Your Honor, I don't think this is not a situation where money would satisfy the issue, because there are really four different franchises at issue here, a Jaguar and a Land Rover, two franchises, and Nissan and Infinity franchises. These are shared spaces. The plaintiff appellant, BICOM, is the Jaguar-Land Rover dealer, and they have been excluded from the space, which they are contractually entitled to, under the prime lease. Both Nissan and the prime landlord acknowledge that BICOM has possessory rights in that space. The sublease, which is part of the franchise under New York law, cannot be terminated, absent following the strictures of the New York Dealer Act. The New York Dealer Act, if nothing else, stands for the proposition that the federal courts cannot be turned into a dispute. Your Honor, I think it's a— I looked at the contract or the provision that says this isn't part of the franchise, and it's pretty darned explicit to me. Your Honor, the surest sign that an agreement is part of a franchise is a provision, and they're saying it's not. The New York Dealer Act is very clear. It says in expressed terms that its terms apply, notwithstanding any terms of the franchise contract. Now, under contract law, you can define anything the way you want it to. You can define a chicken— That provision is in the lease. That provision is in the lease, but I— Not in the franchise agreement. Right, but under the Dealer Act, I think what you— No, the Dealer Act doesn't—the Dealer Act applies regardless of what the franchise agreement says. What's the Dealer Act say about the lease? The Dealer Act provides a definition, and the definition of a franchise is a written arrangement in which there is a community of interest in the marketing of motor vehicles and services related thereto. The New York Court of Appeals and this Court in Beck Chevrolet interpreted that provision broadly. This Court said in Beck Chevrolet that the statute defines a franchise not in terms of a single agreement but as a written arrangement, which might extend beyond the dealer agreement to include secondary documents. Why? The New York Court of Appeals said other documents may be constituent parts of the party's written arrangement, reflecting their shared interest in the sales and servicing of motor vehicles. Counsel? Yes. Nissan says you are out of money. Is that true? Your Honor, first of all, whether the ACIM and LIM are insolvent or not is something that would ultimately be dealt with in a termination proceeding. And what the Dealer Act says is you cannot end-run the Dealer Act proceeding protections and those procedures by carving out part of the franchise, which is the sublease, terminating that, and then getting the franchisee out. Could you answer Judge Pooler's question, please? Your Honor, I don't know whether or not ACIM and LIM are insolvent. I don't know if they are technically insolvent or not. Well, your adversary alleges it, and then you're not here in a position to dispute that? Your Honor, the dealerships are operating. They have inventory. They have personnel. That doesn't mean that they can meet their debts as they come due. Your Honor, one of the issues in the underlying case was whether the debts to Nissan and Nissan Motor Acceptance were curable. And the documents presented to the court below, we would say demonstrate that they were curable, that there were enough assets out there that could be sold in mortgage to pay off the debt. The district court did not take that evidence. The district court did not accept that. And the district court denied a Yellowstone injunction saying it was not curable. Why is that for your client that you are not today insolvent, sir? Your Honor, what was in the record below on the initial motion before the court, there would have been requirements that there would be assets sold in properties mortgage in order to raise the money to pay off those debts. Yes, you would have to sell assets. And having done that, would you be insolvent or not? Your Honor, the way the numbers added up below, it would be, in a sense, a close call as to whether that would sop up all the debts or not. Your Honor, if we don't grant you a stay, what happens to your client with respect to the premises? With respect to the premises, with respect to BICOM, for example, it severely impacts and limits BICOM's ability to complete the construction necessary for the common systems, the building systems, and its operations. You say it limits it. Does it prevent it? It does prevent it, Your Honor. It prevents it because the construction would stop. We would be relying totally on the good graces of Nissan to allow us to do any work, which is not what the prime lease provides. And do you understand that they will not let you construct? Well, Your Honor, they have not said they would not let us do anything, but they have not said they will either. Well, so you're asking us for a stay to permit you to construct, even though, as you stand here today, you don't know that you're prevented from constructing. Your Honor, I think what we're asking here is simply that the statute, as interpreted by the highest court of the state of New York, is applied according to the way it should be. No, but you're not—well, that's the legal issue. The relief you want is a stay, right? Yes, Your Honor. And the New York Court of Appeals didn't decide that we should grant a stay. They interpreted a statute according to you. Yes, Your Honor. And I'm trying to understand what happens if we don't grant the stay. Your Honor, if you don't grant the stay, and I think this goes to the question before, which was irreparable harm, the statute provides for an automatic stay without bond. In other words, the New York legislature, by its enactment of the statute, has determined that a termination of a franchise, broadly defined, is irreparable harm. And here, the termination of the sublease, the eviction from the premises, under the statute, is irreparable harm because it terminates part and parcel of the franchise. I started asking about eviction, and you said, no, you're still there. No, Your Honor, the eviction took place yesterday. The marshals secured the premises. We are no longer in the Nissan side of the building. You're not there. No, we are not there. All right. Thank you. We have from Nissan. Good morning, Your Honors. May it please the Court. My name is John Skelton. I'm here on behalf of Nissan North America, and I will start by bringing the Court up to date as to what did transpire yesterday. On April 27th, Judge Swain entered an order, which is Exhibit B to our opposition, or the transcript, I'm sorry, is Exhibit B. That order allowed for Nissan to evict ASIM, A-C-I-M, A-L-I-M, BICOM, as well as anybody else who was occupying and using the Nissan portion of the premises. So that's about 40 percent of Floors 1 and 2 and all of Floor 5. The U.S. Marshals Office appeared yesterday and did the necessary evictions, and my understanding is that complete legal possession has been returned to Nissan, pursuant to Judge Swain's order. Now, I think it's also important to understand that BICOM, which operates a Jaguar Land Rover dealership, is still there. There are cars in the showroom. There are people that are working. You say there, still there. On their half. Oh, not in Nissan's space, on a separate part of the same building. I'm sorry, yes. So on Floors 1 and 2, if you're looking from 11th Avenue in, the left side is Jaguar Land Rover, 1st and 2nd Floor, about 60 percent. Forty percent to the right-hand side, again, if you're looking in from 11th Avenue, Nissan and Infinity. Are they selling cars in their space? Absolutely. Is that the issue, whether they can sell cars in your space? No, well, the issue was that this project was that Nissan, Mr. Flom, who owns all of these entities, was ultimately supposed to build and renovate both the Jaguar Land Rover dealership, which is done, his half is done, as well as the Nissan and Infinity side, and he was going to operate Infinity and Nissan there through ACIM and ALIM. The Nissan half of the project has not been started except for some of the back-end infrastructure, and the whole, I think what Mr. McCrory said, the single issue before the court, is whether or not the sublease was a part of the franchise. I would respectfully submit that as part of a motion for stay pending appeal, the primary issue before the court is irreparable harm, and in this case, Judge Swain specifically found that Nissan would be irreparably harmed because Nissan is the tenant to Georgetown, which is the owner of that building, under a prime lease. Nissan has obligations to start paying rent of over $518,000 a month starting in July. Nissan ultimately has the responsibility to construct, open, and operate a Nissan and Infinity dealership in that space, and if it doesn't, it is in default of its prime lease obligations, and to the… Would a stay prevent you from doing that? Yes. It would. Absolutely. And that was why Judge Swain entered not only injunctive relief, but a Rule 54B separate and final judgment on our Nissan's claim for possession, because she recognized, and I think that if your honors read Judge Swain's transcript from the hearing on April 27th, which, quite candidly, was the third time where Judge Swain dealt with the issue of whether this sublease should be terminated. On January 20th, when the plaintiffs first filed this case, they sought a Yellowstone injunction, and interestingly, they argued that Judge Swain should enter a Yellowstone injunction precisely because they argued that the Dealer Act stay did not apply to the sublease. Is ACMI free to construct on their part of the property? Well, ACIM and ALIM are the Nissan dealerships. BICOM is the Jaguar Land Rover dealership. They are absolutely entitled to, and the marshal was very careful, that all of the portions of the facility that were deemed shared space, those were not blocked off, those were not locked out, because the marshal understood that if they were shared, they would still have access to those. Would the only consequence of the stay they seek be that you can't construct in your part of the building? Well, first of all, I think that a stay, currently now, as constituted, would be moot, because under Judge Swain's April 27th order, a series of the injunctive relief deadlines have already passed, and possession has already been put in favor of Nissan. So a stay, at this point, wouldn't stay anything. There would have to be a reversal, a reinstatement, and fashioning of some sort of remedy, because the key issue before Judge Swain was she recognized that unless Nissan had the ability to invoke the election under the leases to take over construction, to basically control its future in terms of getting this building, its half of the building, built on time, she specifically found that if they don't get that... If we were to grant a stay of her ruling today, that would have no operative consequence for you, because the action has already been taken? Correct. Unless the court's order goes beyond simply a stay... And undid something. It would have to reverse, reinstate, and start fashioning remedies. And because it wouldn't do anything, that's why you're, in effect, arguing it's moot. The stay application is moot. Correct. Thank you. Thank you, Your Honor.